1
***HUNT, GROGAN, MEERCHAUM & HOSSLER***
330 W. 24th St. - P.O. Box 2919
2
Yuma, Arizona 85366-2919
(928) 783-0101 Phone
3
(928) 783-2788 Fax
4
Candice L. Orduno- State Bar No. 024499
Attorney for Debtor
5

6

7
## IN THE UNITED STATES BANKRUPTCY COURT
8
## FOR THE DISTRICT OF ARIZONA
9

10
IN RE:                                        No. 0:09-bk-01502-JMM

11
SHELLY L. HUGHES,                             Ch. 13

12
                        Debtor.
                                              DEBTOR/RESPONDENT'S MOTION
13
_____              FOR RELIEF FROM JUDGMENT

14
BAC HOME LOANS SERVICING, L.P. fka
COUNTRYWIDE HOME LOANS
15
SERVICING, L.P.,

16
                        Movant,

17
        v.

18
SHELLY L. HUGHES, Debtor; RUSSELL A.
BROWN, Trustee;
19
                        Respondents.
_____
20

21
        COMES NOW the Debtor/Respondent, Shelly L. Hughes, by and through counsel

22
undersigned, and hereby requests this Court to reconsider the Order entered by the Court on July

23
24, 2009 lifting the automatic stay on the grounds and for the reasons that the Movant failed to

24
establish a prima facie case for the granting of the relief from the automatic stay.  The Movant

25
failed to produce evidence indicating the lack of equity in the residential home and that the home

26
is not necessary for reorganization.  In addition, the Movant failed to produce evidence

27
supporting the necessity for relief based upon "cause," including the lack of adequate protection.

28

1  This Motion is made pursuant to Rule 60(b)(6) and is supported by the Memorandum of Points

2  and Authorities attached hereto and incorporated herein by reference.

3      DATED this 3rd day of August, 2009.

4                                          HUNT, GROGAN, MEERCHAUM &
                                          HOSSLER

5

6                                          /s/ Candice L. Orduno #024499

7                                          Candice L. Orduno
                                          Attorney for Debtor/Respondent

8

9  Copy of the foregoing
   mailed to the following

10 this 4th day of
   August, 2009:

11

12 Leonard J. MacDonald
   2525 E. Camelback Road

13 Suite 300
   Phoenix, AZ 85016

14 *Attorney for BAC Home Loans*

15

   Russell A. Brown

16 3838 N. Central Ave.
   Suite 800

17 Phoenix, AZ 85012-1965
   *Trustee*

18

19 By: Tanya Rodriguez

20

21

22

23

24

25

26

27

28                    -2-

# MEMORANDUM OF POINTS AND AUTHORITIES

Rule 60 of the Federal Rules of Civil Procedure, applicable herein by Federal Rule of Bankruptcy Procedure 9024, states that a court may relieve a party from a final judgment, order, or proceeding for any reason that justifies relief. *See* Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) provides courts with the authority to vacate a judgment when it is appropriate to accomplish justice. *See Estate ov VEC Farms, LLC.* v. *Escamilla (In re VEC Farms, LLC)*, 395 B.R. 674 (Bankr.N.D.Cal. 2008); *citing Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864, (1988). While relief from judgment is discretionary, it is granted upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust or where the judgment may cause an extreme undue hardship. *See Etchin v. Star Services, Inc. (In re Etchin)*, 128 B.R. 662 (Bankr.W.D. Wis. 1991); *citing Del Carmen v. Emerson Elec. Co.*, 908 F.2d 158, 161 (7th Cir. 1990); *see also Matarese v. Le Favre*, 801 F.2d 98, 106 (2nd Cir. 1986).

The case at hand warrants relief from judgment. The judgment was clearly unjust as the Movant failed to establish their burden of proof that would require the lift of the automatic stay. In addition, the judgment would cause an extreme undue hardship upon the Debtor, Shelly Hughes, as well as her family. It is for these reasons that this Court should grant Ms. Hughes relief from judgment.

## I. The Movant failed to establish a prima facie case under § 362(d) to warrant the granting of the relief from stay.

In a motion for lift of the automatic stay, a creditor may obtain relief from the stay in two instances: where the debtor lacks equity in the subject property and such property is not necessary to an effective reorganization, and where cause exists to grant relief, including the lack of adequate protection of the creditor's interest in the property. *See In re Planned Systems, Inc.*, 78 B.R. 852 ( Bankr. S.D. Ohio 1987). A creditor seeking relief from the automatic stay is charged with the burden of proof, and must establish a prima facie case to warrant the granting of such relief. *See id.* at 859; *see also In re Walton*, 77 B.R. 617 (Bankr. N.D. Ohio 1987); *Fazio v. Alan*

-3-

1    *Sinton, LTD (In re Fasio)*, 41 B.R. 865 (Bankr. E.D. Pa. 1984); *see also In re Curtis*, 40 B.R. 795

2    (Bankr. D. Utah 1984); *see also Lomas Mortgage USA, Inc. v. Elmore (In re Elmore)*, 94. B.R.

3    670 (Bankr. C.D. Cal 1988). Once the creditor establishes a prima facie case, the burden of

4    proof then shifts to the debtor on all other issues. *See Anderson v. Farm Credit Bank of St. Paul*

5    *(In re Anderson)*, 913 F.2d 530 (8th Cir. 1990).

6       The Movant must establish a prima facie case addressing a number of issues depending

7    on which subsection of § 362(d) the creditor seeks relief under. In this case, the Movant BAC

8    Home Loans Servicing failed to establish the need for relief under either subsection.

9      **A.**     **Under § 362(d)(1), the Movant failed to establish a prima facie case**
               **warranting the relief from the automatic stay for cause, including lack of**

10              **adequate protection in the property.**

11       What constitutes a prima facie case for relief turns upon the grounds for which relief from

12    the automatic stay is sought. *See Planned Sys.* at 860. Under § 362(d)(1), a secured creditor

13    seeking relief must introduce a certain quantum of evidence sufficient to establish a prima facie

14    case to establish that the collateral is not adequately protected, thereby putting the debtor to the

15    burden of introducing evidence showing that the movant's interest in the collateral is adequately

16    protected. *See id.* Such evidence that may be introduced include the showing of an obligation

17    owed by the debtor to the creditor, a valid security interest, and cause justifying relief depending

18    on the allegations asserted, such as a decline in the value of the property or lack of post-

19    confirmation payments. *See id.* However, a creditor cannot obtain relief from stay without

20    producing any evidence whatsoever, and with only unsupported allegations. *See FSFG Service*

21    *Corp. v. Kim (In re Kim)*, 71 B.R. 1011 (Bankr. C.D. Cal. 1987). Absent such a requirement to

22    establish this prima facie case, a creditor could simply state "I move for relief from stay," and the

23    debtor would automatically be placed on the defense of having to introduce all of the evidence

24    proving entitlement to the automatic stay. *See id.* Essentially, a debtor does not need to offer

25    evidence of adequate protection unless the creditor first establishes this prima facie case. *See id.*

26    at 1015.

27

28                             -4-

Although the concept of adequate protection is not precisely defined by the Bankruptcy Code, it is generally agreed that with regard to a relief from stay, a secured creditor's interest is not adequately protected to the extent it is not receiving compensation for the decrease in the value of its collateral. *See In re Wolsky,* 53 B.R. 751 (Bankr. D. N.D. 1985); *see also In re Cardinal Congregate I,* 113 B.R. 371 (Bankr. S.D. Ohio 1990). Here, it appears the Movant failed to indicate any "cause" for relief indicating the need for adequate protection. Other than providing a calculation for lack of post-petition payments on the mortgage, which only amounted to a total of $2,598.76 at the time of filing this Motion, the Movant's "cause" for relief did not show that the Movant's interest was not adequately protected. More than likely, these arrearages could have been attached to the end of the loan. Furthermore, the Movant did not establish that the value of the property was declining or being harmed for the lack of post-petition payments. Again, no documentary evidence or appraisals showing a decline in the value of the property was provided to the court. Nor was there any evidence produced showing any other "cause" for relief such as assertions and evidence showing that Ms. Hughes' home was falling into disrepair and destruction, or that the home lacked proper insurance.

It should be noted, however, that Ms. Hughes was making payments to the Trustee according to the Proposed Chapter 13 Plan submitted in March, 2009. The Plan, although not yet confirmed, was being followed accordingly with timely payments being made to the Trustee. The Plan raised no objection by any of the creditors. In addition, Movant never contacted Ms. Hughes, who was previously unrepresented, to address any issues regarding post-petition payments. Rather, Movant's lack of contact with Ms. Hughes lead Ms. Hughes to believe that Movant had no objection to the Proposed Chapter 13 Plan. Granted, the Movant mailed a statement to Ms. Hughes that was sent for "informational purposes only" and was not intended as an attempt to collect a debt. *See* Exhibit 1 attached hereto and incorporated herein by reference. The letter, dated March 9, 2009, informed Ms. Hughes that the escrow account was analyzed and that there was an increase in the monthly mortgage payments. *See* Ex. 1. The correspondence

did not address the need for post-petition payments. *See id.* The correspondence also did not indicate that Ms. Hughes needed to do anything to "protect" her home. *See id.* Instead, the letter simply instructed Ms. Hughes to call the Customer Service Department if she had any questions. *See id.*

In sum, the Movant failed to establish a prima facie case under § 362(d)(1) and therefore the lift of the automatic stay should not have been granted.

**B.     Under § 362(d)(2), the Movant failed to introduce evidence proving the lack of equity in the residential home.**

Section 362(d)(2) allows a creditor to obtain relief from the automatic stay on a showing that the collateral does not maintain equity and that the property is not necessary for an effective reorganization. *See Elmore* at 677. The Movant asserted that there was no equity in the residential home belonging to Ms. Hughes, but again, provided no such evidence to support this assertion. At the time Movant requested the Lift of the Automatic Stay, the Movant merely provided a calculation of post-petition arrearages owed in the amount of $2,598.76. The "lack of equity" was simply an assertion. As stated above, a creditor cannot obtain relief from stay without producing any evidence whatsoever, and with only unsupported allegations. *See Kim* at 1015. The Movant did not introduce copies of appraisals of the home, an assessment of comparable home sales, nor expert testimony to support a showing that the value in the interest of the home was significantly more than the fair market value of the home itself. In fact, it is strongly believed that the Movant would have been unable to provide any negative evidence.

Ms. Hughes, on the other hand, provided copies of a contract for the sale of the residential home showing the home's sale price set for $119,000.00 - approximately $50,000.00 more than the amount of the Movant's claim. *See* Exhibit 2 attached hereto and incorporated herein by reference. Ms. Hughes potentially had a significant amount of equity in the residential home had the sale proceeded. To date, if Ms. Hughes were permitted to sell the home, it is possible that the home would sell for more than $119,000.00. However, the Movant failed to provide evidence

indicating this potential as well. Ultimately, the Movant did not meet the requirements with regard to this aspect of their burden.

Finally, although not specifically alleged, the Movant never introduced evidence showing that the property was necessary for reorganization. This is the second prong of this subsection that must be proved in tandem with the equity questions. "A debtor's principal residence in a Chapter 13 case is virtually always necessary to an effective reorganization." *See Elmore* at 677. A secured creditor rarely qualifies for a relief from stay under this subsection in a Chapter 13 case. *See id.*

Here, aside from one vehicle, the residential home belonging to Ms. Hughes is the main asset listed in the Chapter 13 Plan. A majority of the debt Ms. Hughes is seeking to reorganize consists of the home mortgage debt, and without the home, the purpose of filing the bankruptcy is defeated. The granting of the lift of stay may frustrate the purpose of the bankruptcy and ultimately cause the dismissal of the bankruptcy filing. The Movant's Motion should have been denied.

As these are all essential elements to establishing a prima facie case, it is evident that the Movant failed to fulfill their portion of the burden of proof. Ultimately, the stay should not have been lifted. This Court must grant Ms. Hughes relief from judgment.

## II. The judgment entered by the Court causes an undue hardship for Ms. Hughes.

As mentioned above, the court lifted the automatic stay so that the Movant could proceed with foreclosure proceedings on Ms. Hughes' residence. The residence is Ms. Hughes' principal residence. Should the Movant proceed with the foreclosure sale, Ms. Hughes will be evicted from her home and forced to find adequate and affordable housing for her family. Ms. Hughes will have the burden of trying to obtain a home that will be affordable for her budget and the likelihood of finding adequate affordable housing, however, is not promising. Furthermore, the forced move may be a disruptive and unstable move for her daughter.

The purpose of filing for the Chapter 13 reorganization was in part to help Ms. Hughes regain her footing after a traumatic year. This past year was marked by the incarceration of Ms. Hughes' husband for sexually assaulting her oldest daughter. As a result of his incarceration, Ms. Hughes fell into financial disarray as her husband completely failed to provide for his family, causing Ms. Hughes to eventually default on many of their debts. Ms. Hughes filed for reorganization in an attempt to reorganize her debts, save her home from foreclosure, and to provide stability for her traumatized family. However, with the lift of the automatic stay granted and a foreclosure sale possibly looming ahead, Ms. Hughes will be forced to uproot her family from the residential home which has been one of the few stabilizing factors in their lives.

Although the court may not take into account the "human" factor that has ultimately caused Ms. Hughes to be in the current situation, it is clear that the lifting of the automatic stay will be a significant undue hardship on Ms. Hughes as well as on her family. The Court should grant Ms. Hughes relief from judgment so that Ms. Hughes may proceed with the reorganization.

WHEREFORE, the Debtor, Shelly Hughes, respectfully requests this Court to grant the following relief:

1.      To reverse the court's ruling and deny the Movant's motion for relief from the automatic stay entered on July 24, 2009;

2.      To reinstate the automatic stay pursuant to section 362 of the Bankruptcy Code;

3.      For such other and further relief as the court deems necessary and just.

DATED this 3rd day of August, 2009.

HUNT, GROGAN, MEERCHAUM & HOSSLER

/s/ Candice L. Orduno #024499
Candice L. Orduno
Attorney for Debtor/Respondent

-8-

# EXHIBIT 1

Century 21 Action Group

PAGE 1

RESIDENTIAL RESALE REAL ESTATE

# PURCHASE CONTRACT





The printed portion of this contract has been approved by the Arizona Association of REALTORS® ("AAR"). This is intended to be a binding contract. No representation is made as to the legal validity or adequacy of any provision or the tax consequences thereof. If you desire legal, tax or other professional advice, consult your attorney, tax advisor, insurance agent or professional consultant.

## 1. PROPERTY

1a.  1. BUYER: **David J Soucy, Stephanie B Soucy**
BUYER'S NAME(S)

2. SELLER: **Shelly Hughes** _____ or ☒ as identified in section 9c.
SELLER'S NAME(S)

3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

1b.  5. Premises Address: **1734 W 27 St** _____ Assessor's #: **105-58-262**
6. City: **Yuma** _____ County: **Yuma** _____ AZ, Zip Code: **85364**
7. Legal Description: **Hacienda Estates 1262**

1c.  8. $ _____ **119,900.00** Full Purchase Price, paid as outlined below
9. _____ **1,000.00** Earnest money **applied to buyers closing costs and prepayables**
10. $ _____ **4,196.50 cash down payment**
11. $ _____ **117,727.00 contingent on buyers ability to obtain a new loan though a**
12. **lender of buyers choice.**

1d.  13. **Close of Escrow:** Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate recorder's office.
14. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all
15. closing documents, and perform all other acts necessary in sufficient time to allow COE to occur on
16. _____ **April** _____ **13** , **2009** ("COE Date"). If Escrow Company or recorder's office is closed on
MONTH        DAY        YEAR
17. COE Date, COE shall occur on the next day that both are open for business.

18. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
19. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds
20. to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

1e.  21. **Possession:** Seller shall deliver possession, occupancy, access to keys and/or means to operate all locks, mailbox,
22. security system/alarms, and all common area facilities to Buyer at COE or _____.
23. Broker(s) recommend that the parties seek appropriate counsel from insurance, legal, tax, and accounting professionals
24. regarding the risks of pre-possession or post-possession of the Premises.

1f.  25. **Addenda Incorporated:** ☐ Assumption and Carryback  ☐ Buyer Contingency  ☐ Domestic Water Well  ☐ HUD forms
26. ☐ H.O.A.  ☒ Lead-Based Paint Disclosure  ☐ Additional Clause  ☐ On-site Wastewater Treatment Facility
27. ☐ Other: _____

1g.  28. **Fixtures and Personal Property:** Seller agrees that all existing fixtures on the Premises, and any existing personal
29. property specified herein, shall be included in this sale, including the following:

30.  • free-standing range/oven
31.  • built-in appliances
32.  • light fixtures
33.  • ceiling fans
34.  • towel, curtain and drapery rods
35.  • draperies and other window coverings
36.  • attached floor coverings

• flush-mounted speakers
• attached fireplace equipment
• window and door screens, sun screens
• storm windows and doors
• shutters and awnings
• garage door openers and controls
• attached TV/media antennas/satellite dishes

• outdoor landscaping, fountains, and lighting
• water-misting systems
• solar systems
• pellet, wood-burning or gas-log stoves
• timers
• mailbox
• storage sheds

Initials: _____ _____
SELLER        SELLER

©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05

Initials: **DJS** / _____
BUYER        BUYER

Page 1 of 9

Century 21 Action Group 394 E. 16th Street Yuma, AZ 85364
Phone: (928) 782 - 1000 17      Fax: (928) 782 - 3323      Joseph Bevington                                    3030 S Tangeri

Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

37. If owned by the Seller, the following items also are included in this sale:

| 38. | • pool and spa equipment (including any | • security and/or fire systems | • water softeners |
| 39. | mechanical or other cleaning systems) | and/or alarms | • water purification systems |

40. **Additional existing personal property included in this sale (if checked):**  ☒ refrigerator  ☐ washer  ☐ dryer

41. As described: _____

42. _____

43. ☒ Other: **Pool cleaning equipment** _____

44. _____

45. _____

46. Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no
47. monetary value, and free and clear of all liens or encumbrances.
48. Fixtures and leased items NOT included: _____
49. IF THIS IS AN ALL CASH SALE, GO TO SECTION 3.

# 2. FINANCING

**2a.** 50. **Loan Contingency:** Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval for the loan described
51. in the AAR Loan Status Report without conditions no later than COE Date. If Buyer is unable to obtain loan approval without
52. conditions by COE Date, Buyer shall deliver a notice of the inability to obtain loan approval without conditions to Seller or Escrow
53. Company no later than COE Date.

**2b.** 54. **Unfulfilled Loan Contingency:** This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
55. after diligent and good faith effort, Buyer is unable to obtain loan approval without conditions by COE Date. Buyer is aware that
56. failure to have the down payment or other funds due from Buyer necessary to obtain the loan approval without conditions and
57. close this transaction is not an unfulfilled loan contingency. Buyer acknowledges that prepaid items paid separately from earnest
58. money are not refundable.

**2c.** 59. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises by an appraiser
60. acceptable to lender for at least the sales price. If the Premises fails to appraise for the sales price, Buyer has five (5) days after notice
61. of the appraised value to cancel this Contract and receive a refund of the Earnest Money or the appraisal contingency shall be waived.

**2d.** 62. **Loan Status Report:** The AAR Loan Status Report ("LSR") with, at a minimum, the Buyer's Loan Information section
63. completed, describing the current status of the Buyer's proposed loan, is attached hereto and incorporated herein by reference.

**2e.** 64. **Loan Application:** Unless previously completed, within five (5) days after Contract acceptance, Buyer shall (i) complete, sign
65. and deliver to the lender a loan application with requested disclosures and documentation; (ii) grant lender
66. permission to access Buyer's Trimerged Residential Credit Report; and (iii) pay all required loan application fees.

**2f.** 67. **Loan Processing During Escrow:** Buyer agrees to diligently work to obtain the loan and will promptly provide the lender with
68. all additional documentation required. Buyer instructs the lender to provide loan status updates to Broker(s) and Seller. Buyer
69. shall sign all loan documents no later than three (3) days prior to the COE Date.

**2g.** 70. **Type of Financing:** ☐ Conventional  ☒ FHA  ☐ VA  ☐ Assumption  ☐ Seller Carryback  ☐ _____
71. (If financing is to be other than new financing, see attached addendum.)

**2h.** 72. **Loan Costs:** Private Mortgage Insurance is required for certain types of loans and shall be paid by Buyer at COE in a
73. manner acceptable to lender. The following may be paid by either party:

74. Discount points shall be paid by: ☒ Buyer  ☐ Seller  ☐ Other _____

75. Discount points shall not exceed: _____0_____ total points (Does not include loan origination fee)

76. A.L.T.A. Lender Title Insurance Policy shall be paid by  ☒ Buyer  ☐ Seller

77. Loan Origination Fee (Not to exceed __1.000__ % of loan amount) shall be paid by ☒ Buyer  ☐ Seller

78. Appraisal Fee, when required by lender, shall be paid by ☒ Buyer  ☐ Seller  ☐ Other _____

**2i.** 79. **Other Loan Costs:** In the event of an FHA or VA loan, Seller agrees to pay up to $ __4,500.00__ of loan
80. costs not permitted to be paid by the Buyer, in addition to the other costs Seller has agreed to pay herein. In addition, for VA
81. loans, Seller agrees to pay the escrow fee. All other costs of obtaining the loan shall be paid by the Buyer.

Initials: ____/____        ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05        Initials: DJS /____
         SELLER   SELLER                                                                BUYER   BUYER

Page 2 of 9
Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        3030 S Tangeri

**2j.**  82. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in
83. the LSR and shall only make any such changes without the prior written consent of Seller if such changes do not adversely
84. affect Buyer's ability to obtain loan approval without conditions, increase Seller's closing costs, or delay COE.

**2k.**  85. **FHA Notice (FHA Buyer Initials Required):** HUD does not warrant the condition of the property. By initialing below, Buyer acknowl-
86. edges receipt of Form HUD-92564-CN, **"For Your Protection: Get a Home Inspection."** Buyer further acknowledges that such
87. form was signed at or before the Contract date. Signed HUD-92564-CN is attached and made a part of this Purchase Contract.

88.                                    (FHA BUYER'S INITIALS REQUIRED)  DJS              SS
                                                                          BUYER            BUYER

# 3. TITLE AND ESCROW

**3a.**  89. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
90. terms of this Contract shall be:

91.  _____First American Title_____        (928) 819-0099        (866) 450-6201
              "ESCROW/TITLE COMPANY"               PHONE/FAX

**3b.**  92. **Title and Vesting:** Buyer will take title as determined before COE. Taking title may have significant legal, estate planning
93. and tax consequences. Buyer should obtain legal and tax advice.

**3c.**  94. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller
95. directly, addressed pursuant to 8t and 9c or as otherwise provided, a Commitment for Title Insurance together with
96. complete and legible copies of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title
97. Commitment"), including but not limited to Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and
98. easements. Buyer shall have five (5) days after receipt of the Title Commitment and after receipt of notice of any
99. subsequent exceptions to provide notice to Seller of any items disapproved. Seller shall convey title by general warranty
100. deed. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's Title
101. Insurance Policy, or if not available, an ALTA Residential Title Insurance Policy ("Plain Language"/"1-4 units") or, if not
102. available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire extended coverage
103. at Buyer's own additional expense.

**3d.**  104. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and
105. address of the Buyer to any homeowner's association in which the Premises is located. (ii) If the Escrow Company is also
106. acting as the title agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to the
107. Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer and Seller for
108. any losses due to fraudulent acts or breach of escrow instructions by the Escrow Company. (iii) All documents necessary to
109. close this transaction shall be executed promptly by Seller and Buyer in the standard form used by Escrow Company. Escrow
110. Company shall modify such documents to the extent necessary to be consistent with this Contract. (iv) Escrow Company
111. fees, unless otherwise stated herein, shall be allocated equally between Seller and Buyer. (v) Escrow Company shall send
112. to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer and Broker(s). (vi) Escrow
113. Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii) If an Affidavit of
114. Disclosure is provided, Escrow Company shall record the Affidavit at COE.

**3e.**  115. **Tax Prorations:** Real property taxes payable by the Seller shall be prorated to COE based upon the latest tax information available.

**3f.**  116. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with Escrow
117. Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions of this Contract
118. in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against any claim, action
119. or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or relating in any way to
120. the release of Earnest Money.

**3g.**  121. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of the COE, including homeowner's
122. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on
123. encumbrances, and service contracts, shall be prorated as of COE or ☐ Other: _____

**3h.**  124. **Assessment Liens:** The amount of any assessment, other than homeowner's association assessments, that is a lien as of
125. the COE, shall be ☒ paid in full by Seller ☐ prorated and assumed by Buyer. Any assessment that becomes a lien after
126. COE is the Buyer's responsibility.

**3i.**  127. **IRS and FIRPTA Reporting:** Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to
128. complete, sign, and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident
129. alien pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller acknowledge that if the Seller
130. is a foreign person, the Buyer must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

Initials: _____ / _____            Initials: DJS / CC
         SELLER  SELLER                      BUYER    BUYER

# 4. DISCLOSURES

**4a.** 131. **Seller Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR SPDS form to the Buyer within five
132. (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection Period
133. or five (5) days after receipt of the SPDS, whichever is later.

**4b.** 134. **Insurance Claims History:** Seller shall deliver to Buyer a written five-year insurance claims history regarding Premises (or
135. a claims history for the length of time Seller has owned the Premises if less than five years) from Seller's insurance
136. company or an insurance support organization or consumer reporting agency, or if unavailable from these sources, from
137. Seller, within five (5) days after Contract acceptance. (Seller may obscure any reference to date of birth or social
138. security number from the document). Buyer shall provide notice of any items disapproved within the Inspection Period or
139. five (5) days after receipt of the claims history, whichever is later.

**4c.** 140. **Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, the Seller shall: (i) notify the Buyer of any known
141. lead-based paint ("LBP") or LBP hazards in the Premises; (ii) provide the Buyer with any LBP risk assessments or
142. inspections of the Premises in the Seller's possession; (iii) provide the Buyer with the Disclosure of Information on
143. Lead-based Paint and Lead-based Paint Hazards, and any report, records, pamphlets, and/or other materials referenced
144. therein, including the pamphlet "Protect Your Family from Lead in Your Home" (collectively "LBP Information"). Buyer shall return
145. a signed copy of the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards to Seller prior to COE.

146. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
147. assessments or inspections during Inspection Period.
148. ☒ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days or
149. _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for
150. the presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP
151. Information or five (5) days after expiration of the Assessment Period cancel this Contract.

152.                     If Premises were constructed prior to 1978, BUYER'S INITIALS REQUIRED   _DJS_   _SC_
                                                                                                  BUYER     BUYER
153.                     If Premises were constructed in 1978 or later, BUYER'S INITIALS REQUIRED  _DJS_   _____
                                                                                                  BUYER     BUYER

**4d.** 154. **Affidavit of Disclosure:** If the Premises is located in an unincorporated area of the county, and five or fewer parcels of
155. property other than subdivided property are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in
156. the form required by law to the Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit
157. of Disclosure items disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure,
158. whichever is later.

**4e.** 159. **Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made
160. herein, in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already
161. obligated by Section 5a, or otherwise by this Contract or any amendments hereto, to correct or repair the changed item
162. disclosed, Buyer shall be allowed five (5) days after delivery of such notice to provide notice of disapproval to Seller.

# 5. WARRANTIES

**5a.** 163. **Seller Warranties:** Seller warrants and shall maintain and repair the Premises so that, at the earlier of possession or COE: (i) all
164. heating, cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter
165. systems, cleaning systems, and heaters, if any), free-standing range/oven, and built-in appliances will be in working
166. condition; (ii) all other agreed upon repairs and corrections will be completed pursuant to Section 6j; (iii) the Premises,
167. including all additional existing personal property included in the sale, will be in substantially the same condition as on the date of
168. Contract acceptance; and (iv) all personal property not included in the sale and all debris will be removed from the Premises.

**5b.** 169. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects
170. and any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely
171. affect the consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for
172. all labor, professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding
173. the COE in connection with the construction, alteration, or repair of any structure on or improvement to the Premises. Seller
174. warrants that the information regarding connection to a sewer system or on-site wastewater treatment facility (conventional
175. septic or alternative) is correct to the best of Seller's knowledge.

5c. 176. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
177. the Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or
178. COE, Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts
179. the Premises. **Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises**
180. **except disclosed as follows:** _____
181. _____

# 6. DUE DILIGENCE

6a. 182. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____ days after Contract
183. acceptance. During the Inspection Period, Buyer, at Buyer's expense, shall (i) conduct all desired physical, environmental,
184. and other types of inspections and investigations to determine the value and condition of the Premises; (ii) make inquiries
185. and consult government agencies, lenders, insurance agents, architects, and other appropriate persons and entities
186. concerning the suitability of the Premises and the surrounding area; (iii) investigate applicable building, zoning, fire, health,
187. and safety codes to determine any potential hazards, violations or defects in the Premises; and (iv) verify any material multiple
188. listing service ("MLS") information. If the presence of sex offenders in the vicinity or the occurrence of a disease, natural death,
189. suicide, homicide or other crime on or in the vicinity is a material matter to the Buyer, it must be investigated by the Buyer
190. during the Inspection Period. Buyer shall keep the Premises free and clear of liens, shall indemnify and hold Seller
191. harmless from all liability, claims, demands, damages, and costs, and shall repair all damages arising from the inspections.
192. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection reports concerning the Premises
193. obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer Advisory* provided by AAR to
194. assist in Buyer's due diligence inspections and investigations.

6b. 195. **Square Footage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH
196. THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A
197. MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.

6c. 198. **Wood-Destroying Organism or Insect Inspection:** IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR
199. INSECTS (SUCH AS TERMITES) ARE A MATERIAL MATTER TO THE BUYER, THESE ISSUES MUST BE
200. INVESTIGATED DURING THE INSPECTION PERIOD. The Buyer shall order and pay for all wood-destroying organism or
201. insect inspections performed during the Inspection Period. If the lender requires an updated Wood-Destroying Organism or
202. Insect Inspection Report prior to COE, it will be performed at Buyer's expense.

6d. 203. **Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the
204. Inspection Period. If the Premises are situated in an area identified as having any special flood hazards by any
205. governmental entity, the lender may require the purchase of flood hazard insurance. Special flood hazards may also affect
206. the ability to encumber or improve the Premises.

6e. 207. **Insurance:** IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO THE BUYER, BUYER SHALL APPLY FOR
208. AND OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR
209. THE PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD. Buyer understands that
210. any homeowner's, fire, casualty, or other insurance desired by Buyer or required by lender should be in place at COE.

6f. 211. **Sewer or On-site Wastewater Treatment System:** The Premises are connected to a:
212.    ☒ sewer system;  ☐ septic system;  ☐ alternative system.

213. IF A SEWER CONNECTION IS A MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE
214. INSPECTION PERIOD. If the Premises are served by a septic or alternative system, the AAR On-site Wastewater Treatment
215. Facility Addendum is incorporated herein by reference.
216.                                                      **(BUYER'S INITIALS REQUIRED)**   *DJS*        *SB*
                                                                                            BUYER        BUYER

6g. 217. **Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state,
218. county, and municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance
219. with said regulations prior to occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming
220. Pool, Buyer acknowledges receipt of the Arizona Department of Health Services approved private pool safety notice.
221.                                                      **(BUYER'S INITIALS REQUIRED)**   *DJS*        *SB*
                                                                                            BUYER        BUYER

6h. 222. **BUYER ACKNOWLEDGMENT:** BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT
223. QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE
224. SURROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO
225. ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE
226. PREMISES AND THE SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKER'S EXPERTISE AND
227. LICENSING, BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY
228. DEFECTS OR CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.

229.                          **(BUYER'S INITIALS REQUIRED)** _____      _____
                                                                BUYER                BUYER

6i. 230. **Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any
231. items disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall
232. conduct all desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items
233. disapproved shall be provided in a single notice.

6j. 234. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller
235. notice of the items disapproved and state in the notice that Buyer elects to either:
236.          (1) immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
237.          (2) provide the Seller an opportunity to correct the items disapproved, in which case:
238.                 (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of
239.                      items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
240.                      conclusively be deemed Seller's refusal to correct any of the items disapproved.
241.                 (b) If Seller agrees in writing to correct items disapproved, **Seller** shall correct the items, complete any
242.                      repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs
243.                      to Buyer three (3) days or _____ days prior to COE Date.
244.                 (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel
245.                      this Contract within five (5) days after delivery of Seller's response or after expiration of the time for
246.                      Seller's response, whichever occurs first, and all Earnest Money shall be released to Buyer. If Buyer does
247.                      not cancel this Contract within the five (5) days as provided, Buyer shall close escrow without correction
248.                      of those items that Seller has not agreed in writing to correct.

249. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
250. extend response times or cancellation rights.

251. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
252. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
253. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

6k. 254. **Notice of Non-Working Warranted Items:** Buyer shall provide Seller with notice of any non-working warranted item(s) of
255. which Buyer becomes aware during the Inspection Period or the Seller warranty for that item(s) shall be waived. Delivery of
256. such notice shall not affect Seller's obligation to maintain or repair the warranted item(s).

6l. 257. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase.
258. The parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service
259. fees and most plans exclude pre-existing conditions.

260.     ☐ A Home Warranty Plan will be ordered by ☐ Buyer or ☐ Seller with the following optional coverage

261.     _____ , to be issued by _____ at a cost not to exceed

262.     $_____ , to be paid for by ☐ Buyer ☐ Seller

263.     ☒ Buyer declines the purchase of a Home Warranty Plan.

6m. 264. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for the
265. purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in
266. working condition and that the Premises is in substantially the same condition as of the date of Contract acceptance. If Buyer does
267. not conduct such walkthrough(s), Buyer releases Seller and Broker(s) from liability for any defects that could have been discovered.

6n. 268. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all
269. inspections and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on,
270. including any propane, until COE to enable Buyer to conduct these inspections and walkthrough(s).

Initials: _____ / _____          ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05          Initials: _____ / _____
         SELLER   SELLER                                                                              BUYER    BUYER

Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

3030 S Tangeri

# 7. REMEDIES

**7a.** 271. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
272. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If
273. the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall
274. become a breach of Contract.

**7b.** 275. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
276. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative
277. Dispute Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages
278. in the event of Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at
279. Seller's option, accept the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from
280. Buyer's failure to deliver the notice required by Section 2a, or Buyer's inability to obtain loan approval due to the waiver of
281. the appraisal contingency pursuant to Section 2c, Seller shall exercise this option and accept the Earnest Money as Seller's
282. sole right to damages. An unfulfilled contingency is not a breach of Contract.

**7c.** 283. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating
284. to this Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs
285. shall be paid equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved
286. disputes or claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and
287. cooperate in the scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be
288. submitted to the American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate
289. Industry. The decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator
290. may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding
291. arbitration within thirty (30) days after the conclusion of the mediation conference by notice to the other and in such event
292. either party shall have the right to resort to court action.

**7d.** 293. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought
294. in the Small Claims Division of an Arizona Justice Court (up to $2,500) so long as the matter is not thereafter transferred or
295. removed from the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed
296. of trust, mortgage, or agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a
297. mechanic's lien; or (v) any matter that is within the jurisdiction of a probate court. Further, the filing of a judicial action to
298. enable the recording of a notice of pending action ("lis pendens"), or order of attachment, receivership, injunction, or other
299. provisional remedies shall not constitute a waiver of the obligation to submit the claim to ADR, nor shall such action
300. constitute a breach of the duty to mediate or arbitrate.

**7e.** 301. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating
302. to this Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney
303. fees, expert witness fees, fees paid to investigators, and arbitration costs.

# 8. ADDITIONAL TERMS AND CONDITIONS

**8a.** 304. All personal items and "trash" in yard including dog residue will be removed
305. from property at least 3 days prior to COE.
306. If this contract is breached through no fault of the buyer or seller, but on
307. the contrary a third party, an automatic five  (5) day extension will be
308. granted by the buyer and seller to close this contract/escrow.
309. _____
310. _____
311. _____
312. _____
313. _____
314. _____
315. _____

Initials: _____ / _____    ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05    Initials: DJS / ___
SELLER   SELLER                                                               BUYER   BUYER

Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

3030 S Tangeri

8b. **316. Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or
317. possession, whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on
318. the Seller, provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the
319. purchase price, either Seller or Buyer may elect to cancel the Contract.

8c. **320. Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

8d. **321. Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

8e. **322. Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations
323. described herein.

8f. **324. Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
325. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
326. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
327. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
328. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
329. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

8g. **330. Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract. This Contract
331. and any other documents required by this Contract may be executed by facsimile or other electronic means and in any number of counterparts,
332. which shall become effective upon delivery as provided for herein, except that the Lead-Based Paint Disclosure Statement may not be signed
333. in counterpart. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

8h. **334. Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m.

8i. **335. Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event
336. from which the time period begins to run is not included and the last day of the time period is included. Contract acceptance
337. occurs on the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the
338. appropriate Broker. Acts that must be performed three days prior to the COE Date must be performed three full days prior
339. (i.e., if COE Date is Friday the act must be performed by 11:59 p.m. on Monday).

8j. **340. Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
341. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
342. signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

8k. **343. Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
344. any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract.

8l. **345. Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by
346. delivering notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become
347. effective immediately upon delivery of the cancellation notice.

8m. **348. Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in
349. writing and deemed delivered and received when (i) hand-delivered, (ii) sent via facsimile transmission, (iii) sent via
350. electronic mail, if email addresses are provided herein, or (iv) sent by recognized overnight courier service, and addressed
351. to Buyer as indicated in Section 8r, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

8n. **352. Earnest Money:** Earnest Money is in the form of: ☒ Personal Check ☐ Other: _____
353. If applicable, Earnest Money has been received by Broker named in Section 8r and upon acceptance of this offer will be
354. deposited with: ☒ Escrow Company ☐ Broker's Trust Account

8o. **355. Release of Broker(s):** Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this
356. transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,
357. boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,
358. governmental regulations, insurance or any other matter relating to the value or condition of the Premises.

359. **(BUYER'S INITIALS REQUIRED)** _____ _____
BUYER          BUYER

8p. **360. Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and
361. a signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8r
362. by _____March 12_____ , 2009 at 11 ☒ a.m. ☐ p.m., Mountain Standard Time. Buyer
363. may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
364. date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

8q. 365. THIS CONTRACT CONTAINS NINE PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE THAT
366. YOU HAVE RECEIVED AND READ ALL NINE PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.

Initials _____ / _____          Initials _____ / _____
SELLER   SELLER                     BUYER    BUYER

PAGE 8

**8r. 367. Broker on behalf of Buyer:**

368. _____Joseph Bevington_____ Century 21 Action Group The Krill
PRINT SALESPERSON'S NAME          AGENT CODE          Team
PRINT FIRM NAME                  FIRM CODE

369. _____3970 W. 24 Street_____ Yuma _____ AZ _____
FIRM ADDRESS                      STATE          ZIP CODE

370. ___(928)329-8888____ ___(928)329-8897___ joe@yumarealestate.com
TELEPHONE                FAX                  EMAIL

**8s. 371. Agency Confirmation: The Broker named in Section 8r above is the agent of (check one):**
372. [x] the Buyer;  [ ] the Seller; or  [ ] both the Buyer and Seller

**8t. 373. The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of a**
374. copy hereof including the Buyer Attachment.

375. _____ 03/10/2009 _____ 03/10/2009
BUYER'S SIGNATURE            MO/DA/YR   BUYER'S SIGNATURE                MO/DA/YR
David J Soucy                           Stephanie B Soucy

376. 2194 W. 1ST ST. _____ 2194 W 1st St. _____
ADDRESS                              ADDRESS

377. Yuma Az 85364 _____ Yuma Az 85364 _____
CITY, STATE, ZIPCODE                 CITY, STATE, ZIPCODE

# 9. SELLER ACCEPTANCE

**9a. 378. Broker on behalf of Seller:**

379. _____Sandra Griffin_____ Prudential Griffin Realty
PRINT SALESPERSON'S NAME          AGENT CODE      PRINT FIRM NAME              FIRM CODE

380. 2855 S. 4th Ave #106 _____ Yuma _____ Az ____ 85364
FIRM ADDRESS                              STATE          ZIP CODE

381. 928 344-4020 928 344-0192 _____ grgyuma@hotmail.com
TELEPHONE          FAX                    EMAIL

**9b. 382. Agency Confirmation: The Broker named in Section 9a above is the agent of (check one):**
383. [x] the Seller; or  [ ] both the Buyer and Seller

**9c. 384. The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a**
385. copy hereof and grant permission to Broker named on Section 9a to deliver a copy to Buyer.

386. [x] Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer.
387. If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

388. _____ 3/11/09 _____ _____
SELLER'S SIGNATURE          MO/DA/YR    SELLER'S SIGNATURE                MO/DA/YR

389. Shelly Hughes _____ _____
SELLER'S NAME PRINTED                   SELLER'S NAME PRINTED

390. 1734 W. 27th St. _____ _____
ADDRESS                                 ADDRESS

391. Yuma, Az. 85364 _____ _____
CITY, STATE, ZIPCODE                    CITY, STATE, ZIPCODE

392. [ ] OFFER REJECTED BY SELLER: _____
                                   MONTH      DAY      YEAR      (SELLER'S INITIALS)

**For Broker Use Only:**

Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
MO/DA/YR

This form is available for use by the entire real estate industry. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. ©Arizona Association of REALTORS® 2005 • This form is available through your local association of REALTORS® • Form RPC  5/05

Initials: _____ / _____                                Initials: DJS / SS
SELLER     SELLER                                              BUYER   BUYER

©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05

Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

3030 S Tangeri

# COUNTER OFFER ____
## Prudential Griffin Realty



THE PRINTED PORTION OF THIS CONTRACT HAS BEEN APPROVED BY THE ARIZONA ASSOCIATION OF REALTORS®. THIS IS INTENDED TO BE A BINDING CONTRACT. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OR THE TAX CONSEQUENCES THEREOF. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.

C. 1. This is a Counter Offer originated by the: ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant. This is a Counter Offer to the ☒ Offer

C. 2. ☐ Counter Offer dated _3/10/09_ between the following Parties:
                   MO/DA/YR

C. 3. Seller/Landlord: _Hughes_

C. 4. Buyer/Tenant: _Sealey_

C. 5. Premises: _1734 W 27th St._

C. 6. Acceptance of the above Offer and/or Counter Offer is contingent upon agreement to the following:

C. 7.

C. 8. ① This offer & acceptance subject to approval

C. 9. by Seller's bankruptcy attorney & court.

C. 10.

C. 11.

C. 12. ② Close of escrow to be extended to May 15, 2009

C. 13.

C. 14. but may close sooner by mutual agreement.

C. 15.

C. 16. ③ There will be no proration of 2009 property

C. 17.

C. 18. taxes.

C. 19.

C. 20. ④ Refrigerator is not included.

C. 21.

C. 22.

C. 23. All other terms & conditions of original offer

C. 24.

C. 25. to remain the same

C. 26.

C. 27.

C. 28.

C. 29. Time for acceptance: Unless acceptance of this Counter Offer is signed by all parties and a signed copy delivered in person, by mail or facsimile

C. 30. and received by the party originating the Counter Offer, indicated on line C.1, or received by _____
                                                     (BROKER)

C. 31. by _____ at _____ a.m./p.m., Mountain Standard Time or unless this Counter Offer has been previously withdrawn by the originating
      (MO/DA/YR)       (TIME)

C. 32. party, this Counter Offer shall be considered withdrawn at the date and time specified on line C.31. Except as otherwise provided in this Counter

C. 33. Offer, the Parties accept and agree to all terms and conditions of the above Offer and/or Counter Offer. Until this Counter Offer has been

C. 34. accepted in the manner described above, the Parties understand that the Premises can be sold or leased to someone else or either Party may

C. 35. withdraw the offer to buy, sell, or lease the Premises. The undersigned acknowledges receipt of a copy hereof.

C. 36. _Shelly Hughes_         Date: _3/11/09_     Time _12:34 pm_

C. 37. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant            MO/DA/YR

C. 38. _____ Date: _____ Time _____

C. 39. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant            MO/DA/YR

## ACCEPTANCE

C. 40. The undersigned agrees to the modified or additional terms and conditions in the above Counter Offer and acknowledges receipt of a copy hereof.

C. 41. ☐ An additional Counter Offer is attached.

C. 42. _____ Date: _____ Time _____

C. 43. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant            MO/DA/YR

C. 44. _____ Date: _____ Time _____

C. 45. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant            MO/DA/YR

**For Broker Use Only**    Brokerage File/Log No.    Manager's Initials    Broker's Initials    Date

This form is available for use by the entire real estate industry. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
© 1996 Arizona Association of REALTORS®    This Form Available Through Your Local Board of REALTORS®      (Counter Offer Rev 5/96)

EXHIBIT 2


**Countrywide**
HOME LOANS

WILLIAM C & SHELLY L HUGHES                    March 9, 2009
1734 W 27TH ST
YUMA AZ  85364-0000

**This statement is being furnished <u>for informational purposes only</u> and should not be construed as an attempt to collect against you personally. While in the future, your obligation to Countrywide may or may not be discharged by operation of law, Countrywide will retain the ability to enforce its rights against the property securing this loan should there be a default.**

**If you are presently involved in a Chapter 13 proceeding, please be advised that should this amount conflict with any order or requirement of the Court, you are required to obey all orders of the Court.**

---

### PAYMENT CHANGE NOTIFICATION

This is to advise you that a recent escrow analysis completed on your loan has resulted in a change to your monthly payment.

---

**WHAT THIS MEANS**

Due to the change in your escrow payment, your current monthly payment of $ 669.70 has also changed.  Effective 4/1/2009 your new monthly payment amount will be $ 759.36.

Below is a breakdown of the new payment calculations:

| | |
|---|---|
| New Principal & Interest Payment | $ 502.65 |
| New Escrow Payment* | $ 256.71 |
| **New Monthly Payment** | **$ 759.36** |

\* If your account is included in a Chapter 13 plan, we have credited the escrow account for the amount included in the proof of claim.

**WHAT YOU NEED TO DO**

If you have any questions, please contact our Customer Service Department at 1-800-669-5224.

Cc:     TIFFANY & BOSCO                          **Account #:** 339703
        2525 EAST CAMELBACK RD STE 300           **Case #:**  09-01502/AZ/
        PHOENIX, AZ 85016-0000

        RUSSELL BROWN
        # 800   3838 N. CENTRAL AVE.
        PHOENIX, AZ  85012-1965